**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JEFFREY AUDI,**

                                        **Plaintiff,**

        **-against-**                                        **07-CV-1220**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

                                        **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


                          **DECISION & ORDER**

**I.      INTRODUCTION**

        Plaintiff brought this action pursuant to section 205(g) of the Social Security Act, 42

U.S.C. § 405(g), appealing a final decision of the Commissioner of Social Security denying

Plaintiff's claim for Social Security benefits.  The matter is now before the Court on the

parties' cross-motions for judgement on the pleadings pursuant to Rule 12(c) of the

Federal Rules of Civil Procedure.

**II.     BACKGROUND**

        Plaintiff filed a claim for Social Security Disability Insurance Benefits (DIB) on

August 4, 2004, alleging disability due to depression, panic attacks, anxiety, and bipolar

disorder. (See R. 17).[1]  At issue in the matter is the determination of Administrative Law Judge Carl E. Stephan, based on the evidence presented at the hearing held on June 6, 2006, that Plaintiff's alcoholism was a contributing factor material to the determination of disability and, thus, he is not entitled to DIB. (R. 14-26).

Plaintiff is a college graduate who was thirty-six years old at the time of his alleged onset of disability. (See R. 30, 31, 49, 167).  His past relevant work experience included work as a hotel manager from January 1990 to January 1994; an owner/operator of a restaurant from January 1994 to May 1996; an assistant manager at a restaurant from May 1996 to September 1996; a food manager at a college from September 1996 to January 2001; an auditor at a convenience store company from January 2001 to October 2001; and, as a salesperson for a cable television company from October 2001 to February 2003. (R. 161-62).  At the hearing, Plaintiff testified that his last job was as a salesperson which required him to go door-to-door soliciting cable services. (R. 32).  He claimed that he left that job in February 2003 due to depression and anxiety, id., but he also acknowledged that he had been convicted of driving while intoxication (DWI) four times and had lost his driver's license in January 2003 due to a felony DWI conviction. (R. 30).

In December 2003, Betty Longo, a clinical social worker at the Glens Falls Hospital's Behavioral Health Outpatient Center (the Outpatient Center), evaluated Plaintiff upon referral from the Conifer Park Outpatient Center. (R. 319-21). Plaintiff told Ms. Longo that he was on medical leave from his sales position and had a history of alcoholism. (R.

---

[1]"R" refers to the administrative record.

320).  He claimed that he had been sober for about one year, but continued in treatment

at Conifer Park with some ongoing symptoms of depression and anxiety.  Id.  Upon mental

status examination, Ms. Longo assessed that: Plaintiff was friendly, pleasant, and

interactive; his mood was mildly anxious; he maintained good emotional control

throughout the interview; he denied any current suicidal ideation; he  had no psychotic

features; his insight into his need for ongoing treatment was present;  his judgment for

everyday living was intact; his immediate and remote memories were grossly intact; and

his intellectual functioning was average to above. (R. 320).   On the DSM-IV multiaxial

scale,[2] Ms. Longo assessed on Axis I: "episode major depression, anxiety disorder not

otherwise specified (NOS), rule out panic disorder, and alcohol dependence"; on Axis II:

"deferred"; on Axis III: "elevated liver functions"; on Axis IV: "loss of driver's license and

inability to work"; and, on Axis V, a global assessment of functioning (GAF) score of 50.[3]

Ms. Longo referred Plaintiff to Dr. Kathleen Orsak, a staff psychiatrist, for a psychiatric

evaluation. Id.

On February 3, 2004, Dr. Orsak assessed that Plaintiff was fully oriented and made

good eye contact; his speech was normal; his mood was depressed, anhedonic, and

scared; his affect was constricted, anxious, and depressed; his intelligence was within the

---

[2]The DSM-IV multiaxial scale assesses an individual's mental and physical condition on five axes, each of which refers to a different class of information. Axis I refers to clinical disorders; Axis II refers to personality disorders; Axis III refers to general medical conditions; Axis IV refers to psychosocial and environmental problems; and Axis V cites the individual's global assessment of functioning ("GAF"). American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 4th Ed., Text Revision (2000)("Diagnostic and Statistical Manual of Mental Disorders - IV-TR"), pp. 27-37.

[3]A GAF in the range of 41 to 50 signifies "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders - IV-TR, p. 34

average to above average range; he reported auditory hallucinations; his memory was intact; and his insight and judgment were good. (R. 317-318).  On the DSM-IV multiaxial scale, Dr. Orsak assessed "major depression with psychotic features, alcohol dependence, and rule out generalized anxiety disorder" on Axis I; and a GAF score of 45 on Axis V. Id.; see fn. 3, *supra.*

Plaintiff was admitted to the Mental Health Unit of Glens Falls Hospital (the Inpatient Center) on February 12, 2004, due to suicidal ideation reported by Plaintiff's wife. (R. 314).  Plaintiff made several statements prior to being admitted to the Inpatient Center that were contradicted by other evidence and which the ALJ found negatively impacted upon Plaintiff's credibility.  In this regard, Plaintiff told the intake clinician at Glens Falls Hospital, Janice Ganter, that he told his counselor at Conifer Park that he intended to drive his car into a tree but, he asserted, this could not happen because he did not drive. To the contrary, Plaintiff's wife told Ganter that Plaintiff drove on a daily basis.  Plaintiff also reported that he had been abstinent from alcohol for 13 months since his felony DWI in January 2003 (R. 314, 315).  However, Plaintiff's wife reported that Plaintiff had been regularly driving to, and stopping at, a bar "that he used to hang out at," and that, the night before, Plaintiff came home smelling of alcohol and was disheveled. (R. 314).  Plaintiff's wife reported that Plaintiff told her that he had been drinking non-alcoholic beer, but Plaintiff's wife suspected that Plaintiff had relapsed because Plaintiff did not remember coming home and appeared to be in a blackout state.  Plaintiff also reported that he had not eaten that day, but his wife reported that he had eaten for breakfast the "sloppy joes" she made for the previous night's dinner. Id.  Plaintiff reported a legal history which included four DWI convictions, (R. 315), and he acknowledged that he was serving five

years probation for a felony DWI conviction in January 2003.  Plaintiff denied a history of

violence, but acknowledged that he was in a bar fight the previous night.  Plaintiff reported

that he worked as a salesperson for one-and-a-half years until his felony DWI conviction,

and was, at the time, on long term disability. He reported that he volunteered at a soup

kitchen twice per week. Id.

Upon mental status examination, Ms. Ganter observed that Plaintiff was minimizing

and manipulative. (R. 315, 316). Plaintiff was very guarded and agitated throughout the

interview, especially when confronted with the contradictions between his story and his

wife's story. Id. He made poor eye contact and at some points appeared to be staring out

into space. (R. 316). His mood was depressed, scared, and anxious. Plaintiff's affect

was constricted. He was suicidal with plan, intent, and means to drive his car into a tree.

His thought processes were tangential and ruminative with some thought blocking. He was

paranoid and reported auditory hallucinations. Plaintiff's intelligence was average. His

judgment and insight were grossly impaired. Plaintiff's memory was very selective. Id.

On the DSM-IV multiaxial scale, Ms. Ganter diagnosed depressive disorder not

otherwise specified (NOS), anxiety disorder NOS, psychotic disorder NOS, and alcohol

dependence on Axis I; a personality disorder NOS on Axis II; legal problems and coping

skills on Axis IV; and a GAF score of 20 on Axis V. (R. 316).[4]

Dr. Emilio Ruelos, a psychiatrist at Conifer Park, completed a psychiatric

questionnaire on March 24, 2004. (R. 228-34).  Dr. Ruelos noted that Plaintiff was

---

[4]A GAF score in the range of 11 to 20 signifies "some danger of hurting self or others (e.g.; suicide attempts without a clear expectation of death; frequently violent; manic excitement) or occasionally fails to maintain minimal personal hygiene (e.g.; smears feces) or gross impairment in communication (e.g., largely incoherent or mute)."Diagnostic and Statistical Manual of Mental Disorders - IV-TR, p. 34.

undergoing intensive outpatient psychotherapy since his alcohol relapse four weeks ago. (R. 228, 230).  Upon mental status examination, Dr. Ruelos assessed that Plaintiff was fully oriented; his attitude was cooperative and his behavior was appropriate; his speech was normal; his thought processes were intact; his perception was mildly impaired; his mood was depressed; his affect was normal; his insight and judgment were slightly impaired; and he had short term memory difficulties. (R 228-232).  Dr. Ruelos opined that Plaintiff's ability to function in a work setting was impaired due to anxiety which limited his sustained concentration, persistence, and social interaction. Id.  On the DSM-IV mutliaxial scale, Dr. Ruelos diagnosed alcohol dependence, a generalized anxiety disorder, and depression on Axis I; moderate social, legal, occupational, and family problems on Axis IV; and a GAF score of 53 on Axis V. (R. 229).[5]

Dr. Abdul Hameed, a State agency psychiatric consultant, reviewed the evidence of record in April 2004 and assessed that Plaintiff's affective, anxiety-related, and substance abuse disorders were not of Listings-level severity. (R. 235, 238, 240, 243).  Dr. Hameed assessed that Plaintiff had no restrictions of activities of daily living; mild difficulties maintaining social functioning; moderate difficulties maintaining concentration, persistence, or pace; and one or two extended episodes of decompensation.[6] (R. 245). He opined that Plaintiff had no significant limitations understanding, remembering, and

---

[5]A GAF of 51 to 60 signifies "moderate symptoms (e.g., flat affect and circumstantial speech occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers)." Diagnostic and Statistical Manual of Mental Disorders - IV-TR, p. 34.

[6]Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing the activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.00(C)(4).

carrying out detailed instructions; sustaining an ordinary routine without supervision; working in coordination with others; interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers; and maintaining socially appropriate behavior. (R. 249, 250). Dr. Hameed also opined that Plaintiff had moderate limitations in: maintaining attention and concentration for extended periods; performing activities within a schedule; and responding appropriately to changes in the work setting. Id.  Dr. Hameed noted that Plaintiff had a long history of alcoholism which included felony DWI convictions. (R. 251). Dr. Hameed concluded that Plaintiff's main problem was alcoholism, but, when sober Plaintiff was able to work and his family was intact. Id.

       Dr. David Funari, a consultative psychologist, evaluated Plaintiff on November 17, 2004 at the request of the State agency. (R. 282-85).  Plaintiff stated that he was an alcoholic and that he was mentally inefficient. (R. 283).  He told Dr. Funari that he had lost his driver's licence due to a DWI conviction, (R. 282); that he started working at the age of sixteen, (R. 284); that his depression and anxiety began in his early twenties, (R. 283); that he had held managerial roles in the restaurant business, (R. 284); and that employers were satisfied with his work but he often quit his jobs due to stress and anxiety. Plaintiff was then-currently undergoing psychotherapy at the Outpatient Center.  Upon mental status examination, Dr. Funari assessed that:  Plaintiff was fully oriented; Plaintiff appeared sad and his responses were slow; Plaintiff had no thought disorders or psychosis; Plaintiff's mood was flat and his affect was numb; Plaintiff's concentration was impaired; Plaintiff's fund of information was fair; Plaintiff's insight was fair; and Plaintiff's judgment was variable. Id.  Regarding Plaintiff's activities of daily living, he reported that

7

he washed dishes, did laundry, grocery shopped, used his computer, watched television, and attended treatment sessions. (R. 285).

Dr. Funari assessed that that Plaintiff was able to understand and follow instructions; had good short term memory and good abstract thinking; was slow in performing complex mental tasks; and had difficulty staying focused. (R. 285).  On the DSM-IV multiaxial scale, Dr. Funari diagnosed bipolar disorder, currently in depressed phase, in partial remission on Axis I; marital and family problems on Axis IV; and a GAF score of 49 on Axis V. Id.

Dr. Ann Herrick, a State agency psychological consultant, reviewed the evidence of record in December 2004 and assessed that Plaintiff's affective disorder and substance abuse disorder were not of Listings-level severity. (R. 330, 333, 338).  Dr. Herrick assessed that Plaintiff had moderate restrictions in performing the activities of daily living; had moderate difficulties in maintaining social functioning; had marked difficulties in maintaining concentration, persistence, or pace; had one or two episodes of deterioration; had no significant limitations in understanding, remembering, and carrying out short, simple instructions; had no significant limitations in sustaining an ordinary routine without special supervision; had no significant limitations in working in coordination with others; had no significant limitations in making simple work-related decisions; had no significant limitations in accepting instructions and responding appropriately to criticism from supervisors; had no significant limitations in getting along with peers and co-workers; and had no significant limitations in maintaining socially appropriate behavior; had moderate limitations in maintaining concentration and attention for extended periods;  had moderate limitations in performing activities within a schedule; and had moderate limitations in

responding appropriately to changes in the work setting. (R. 330-338).

Plaintiff continued psychiatric therapy with Ms. Longo from January 2005 through September 2005. (R. 364, 371).  In January, Plaintiff told Ms. Longo that he was caring for his injured mother and taking his daughter to a ski area once a week. (R. 364).  In September, Plaintiff told Ms. Longo that he had been taking care of his daughter all summer and was coaching her fourth-grade soccer team. (R. 371).

Plaintiff's longtime attending psychiatrist, Dr. Michael Slome, M.D., completed a Mental Impairment Medical Source Statement on April 19, 2005 (R. 352-356).  Plaintiff contends that the statement "was prepared 26 months after [he] abstained from alcohol except for his relapse."  Dr. Slome diagnosed Major Depression with Psychosis, General Anxiety Disorder, and Hypertension. (R. 352).  Dr. Slome identified the following signs and symptoms: poor memory, socially isolated, depression, auditory hallucinations, recurrent panic attacks, paranoia and disorientation. (R. 352).  Dr. Slome opined that Plaintiff suffers from an ". . . inability to handle daily environmental stressors without a marked increase in anxiety; lack of motivation is present as part of the depressive syndrome [associated with] . . . feelings of depression, energia, anxiety, anhedonia, poor motivation, mental dullness, low sex drive, paranoia, impaired concentration, short-term memory impairment and a past history of suicidal ideation and auditory hallucinations." (R. 353).  Dr. Slome also stated that "depressive symptoms have exacerbated symptoms of chronic lower back pain," (R. 354),[7] but stated that Plaintiff did not have any physical limitations that would

---

[7] A 08/07/00 X-rays showed mild degenerative disc disease with mild to moderate facet arthrosis and "mild grade I "questionable spondylolysis and minimal grade I spondylolisthesis at the lumbosacral juntion. (R. 226).

9

limit his ability to work at a regular job on a sustained basis. (R. 356).  Dr. Slome rated Plaintiff's "mental abilities and aptitude" to perform different types of unskilled, semiskilled, and skilled work was either "good" (meaning "the ability to function in the area is limited but satisfactory") or "fair" (meaning "the ability to function in this area is seriously limited, but not precluded") (R. 354-355).  Dr. Slome noted that "[t]he depressive disorder interferes with attention concentration and short-term memory which affects the mental activities [noted in the categories cited]," and that "patients with depression often cannot focus on even simple tasks." (R. 355).   He also noted that "Depression impairs activities of daily living. The patient's symptoms of paranoia make it difficult for him to function in settings outside of the home." (R. 355).  In the "treatment and response" section of the form, Dr. Slome noted that Plaintiff was making "slow progress" that had been complicated by the need to adjust medications and dosages. (R. 353).

Plaintiff also treated with Dr. Pankai Kishore, a psychiatrist, from June 21, 2006 through November 11, 2006.  (R. 425-430).  Progress notes from these sessions indicate Plaintiff's symptoms including poor concentration and attention resulting in poor judgment, tearful depression, high anxiety levels, relationship problems, blunt and/or flat affect, fatigue, memory impairment, and a disheveled appearance. Id.  The progress notes also indicate an improvement in Plaintiff's mood over time, and, generally, indicate his "appropriate thought content." Id.

On March 22, 2006, Dr. Kishore completed a psychiatric evaluation, noting that Plaintiff's chief complaint was "depression" and that his stressors were: "Recent separation from wife (Nov 05).  Jobless and having financial difficulties. He has applied for disability."  (R. 419-21).   Plaintiff reported an extensive history of alcohol dependence

10

since his early twenties. (R. 420).  He told Dr. Kishore that he had been sober for the past one-and-a-half years.  Upon mental status examination, Dr. Kishore observed that Plaintiff was fully oriented, made good eye contact, and related well; Plaintiff's affect was dysphoric; his speech was normal; his thought processes were logical and organized; he had no delusions, hallucinations, or suicidal ideation; his attention and concentration were fair; his memory was intact; and his insight was fair.  On the DSM-IV multiaxial scale, Dr. Kishore assessed "bipolar disorder I (mixed), alcohol dependence in remission, and rule out recurrent major depression" on Axis I; relationship problems on Axis IV; and a GAF score of 70 on Axis V. (R. 420-21).[8]

At the hearing, Plaintiff testified that the last time that he used alcohol was in February 2004 when he "had a relapse while at Conifer Park."  R. 34-35.  He attested that he "self-treated" for alcohol by going to AA meetings and through "discussions with [his] counselor on a regular basis and [his] family doctor, . . .  Dr. Matthew Pender."  R. 35.[9]  He further attested that he sleeps over 12 hours per night because his sleep is typically interrupted 2 times per night when his "mind starts to race a little bit." (R. 37).  He stated that previously, he had heard voices but that he does not hear them any longer because his medication "seems to be working."  (R. 37-38).  He attested that he has problems with memory that cause him to forget to perform chores around the house, to forget to take his

_____

[8] "A GAF in the range of 61 to 70 signifies some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, with some meaningful interpersonal relationships." Diagnostic and Statistical Manual of Mental Disorders - IV-TR, p. 34.

[9] Dr. Pender's records (R. 262-274) from 11/6/01 through 8/19/04 contain evidence of erectile dysfunction, hyperlipidemia, elevated liver function, obesity (e.g. 5'9" tall 239 lbs. on 3/24/03), alcoholism (2/11/03),  "alcoholism, in remission" (2/2/04), and generalized anxiety. Side effects of medication (e.g. Effexor and Xanax ) were thought to be contributing to erectile dysfunction and fatigue. (R 263, 267).

medication, and, the week before the hearing, to forget to "go with his father and pick up [his daughter] at school." (R. 38).  He further attested that he lacks motivation and does not care how he looks.  He testified that he showers only twice per week, does not change out of sleeping clothes, has no interest in cooking, and usually leaves his home only twice per week to shop with his father, to pick up prescriptions, or to attend appointments. (R. 39-41). He also testified that he loses focus and concentration when attempting to complete simple tasks, and stated that he had difficulties filing out a "short questionnaire" his attorney had sent to him.  Id.

## III.    ALJ's Analysis

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  The administrative regulations established by the Commissioner require the ALJ to apply a five-step evaluation to determine whether an individual qualifies for disability insurance benefits.  See 20 C.F.R. §§ 404.1520, 416.920; see also Williams v. Apfel, 204 F.3d 48, 48–49 (2d Cir. 1999); Bush v. Shalala, 94 F.2d 40, 44–45 (2d Cir. 1996).

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment which is listed in Appendix 1 of the regulations, [t]he [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to

perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Barry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

Prior to applying this five-step framework, the ALJ must determine the date on which the claimant-plaintiff last met the Act's insured status requirement, whereby the claimant must establish disability prior to or on that date last insured. See 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1); 20 C.F.R. §§ 404.130, 404.131(b), 404.315(a); see also Arnone v. Bowen, 882 F.2d 34, 37–38 (2d Cir. 1989).

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2008. (R. 19). At the first two steps of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability date (February 3, 2003), and that his "chronic alcohol abuse, affective disorder[10] and anxiety disorder" were severe impairments. (R. 19); see  20 C.F.R. § 404.1520(b) and 404.1520(c).

At step three, the ALJ determined that if Plaintiff stopped abusing alcohol his impairments, whether considered singly or in combination, would not meet or medically equal any Listed impairment. (R. 21-22). 20 C.F.R. § 404.1520(d).  In this regard, the ALJ concluded that, when abusing alcohol, Plaintiff's depressive disorder and anxiety disorder were of Listings-level severity. (R. 20-21). 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, Subpart P, Appendix 1, Sections 12.04 and 12.06.  However, the ALJ concluded that,

---

[10]An affective disorder is defined by the regulations as a mental impairment characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.04.

13

absent Plaintiff's alcohol abuse, his depression and anxiety disorders were not of Listings-level severity. (R. 21-22).

In reaching this conclusion, the ALJ noted that, when actively drinking, Plaintiff "suffers mild impairment or activities of daily living; market impairment of social functioning as evidenced by illegal activities including driving while intoxicated, loss of family, loss of multiple jobs; market impairment of concentration, persistence and pace as evidenced by hallucinations and mania; and repeated episodes of decompensation, persistence and pace. . . . . [However], the claimant's symptoms of poor concentration, mania, and hallucinations are only present when the claimant is actively abusing substances." (R. 20).

The ALJ further stated:

In terms of opinion evidence, . . . the opinion of the claimant's treating psychiatrist, Dr. Slome, is accurate only as it pertains to the claimant's mental state when he is under the influence of alcohol. . . .   [In his April 19, 2005 Medical Source Statement, Dr. Slome ] states that the claimant's diagnoses include major depression with psychosis and a general anxiety disorder.  The claimant's symptoms are described as . . . depressed mood, emotional lability, recent auditory hallucinations, recurrent panic attacks, inappropriate suspiciousness in that the claimant is described as believing that people are talking about him . . . .  Dr. Slome finds that the claimant's mental impairments have resulted in slight restrictions of activities of daily living; moderate difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; and repeated (four or more) episodes of decompensation each of extended duration.

The [ALJ] notes  that the claimant advised his most recent psychiatrist, Dr. Kishore, that he experiences symptoms of mania when he is alcohol dependant.  The claimant also advised Dr. Kishore that he was hospitalized approximately 2 years ago due to worsening depression and suicidal thoughts after a relapse on alcohol.

When the claimant underwent his initial psychiatric evaluation at the Glens Falls Hospital Outpatient Clinic on February 3, 2004, he mentioned that he never had hallucinations before he started to drink.  The claimant also admitted to passive suicidal ideations throughout the time he has been drinking.

Therefore, it is concluded that when actively drinking the claimant has significant symptoms consistent with mania, hallucinations, paranoia and suicidal ideations.

14

> The claimant has reported significant psychiatric symptoms to his treating psychiatrists and mental health care providers.  Therefore, the opinion of Emilio Ruelos, M.D., who . . . found that claimant has a poor memory and sluggish thinking but should be able to return to work on a part-time basis in a low stress position is also consistent with the objective evidence when the claimant is under the influence.

R. 20- 21.

The ALJ noted further that "[a]t the time of most recent psychiatric evaluation in March 2006, the claimant was neatly groomed and made good eye contact. He related well. His affect was dysphoric, and thought processes were logical and organized.  His attention and concentration appeared fair, and his memory was intact." Id.  The ALJ stated that, although Plaintiff alleged that he had severe impairments with daily activities, concentration, memory, and social functioning even when sober, the evidence indicated that Plaintiff had cared for his daughter for the summer, coached her soccer team, took her skiing in the winter, and volunteered 2 days per week in a soup kitchen. (R. 21-24). The ALJ noted the contradicted facts made upon his admission to the Glens Falls Hospital Inpatient Center on February 12, 2004, such as his allegations of sobriety at the time, were indications of Plaintiff's lack of credibility.  (R. 24).  The ALJ also wrote:

> Since the claimant's healthcare-providers chiefly rely on what the claimant is reporting to them, it is reasonable to conclude that the information that the claimant provides to them is not entirely candid. Therefore, the conclusions reached by his healthcare providers regarding claimant's symptoms and functionality can be considered suspect due to the sometimes faulty information provided by the claimant.  Moreover, his subjective complaints should be considered in the context of the examination.  When the claimant was examined by Dr. Kishore, for example, the claimant stated that he was applying for disability benefits. Under these circumstances, it is hardly surprising that the claimant [was] attempting to put "his worst foot forward" in reporting his subjective complaints.

R. 24-25.

15

The ALJ concluded that, absent alcohol abuse, Plaintiff retained the RFC to perform simple, one-step work at all exertional levels. (R. 22-26).  Since Plaintiff's RFC precluded the performance of any of his past relevant work, the ALJ considered Plaintiff's RFC and vocational factors in conjunction with the Grids. (R. 25-26).  The ALJ acknowledged that Plaintiff was not capable of performing the full range of work at any exertional level due to his non-exertional limitations (i.e., his mental limitations), (R. 25) but, since Plaintiff's non-exertional limitations had little or no effect on the occupational base of unskilled work at all exertional levels, the ALJ referred to the Medical-Vocational Guidelines (the Grids) of Appendix 2 of Subpart P of Part 404 as a framework for decision-making. (R 25-26), see 20 C.F.R. § 404.1596a(d); 20 C.F.R Part 404, Subpart P, Appendix 2 Section 200.00(e); Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986)(If a claimant has a non-exertional limitation that does not significantly narrow the range of work which he is capable of performing, then reference to a rule within the framework of the Grids is appropriate).  Because Plaintiff was a "younger" individual with at least a high school diploma, the transferability of job skills was immaterial. (R. 25; see R. 30, 31); see also 20 C.F.R. § 404.1563(c) and 404.1564.  The ALJ determined that Plaintiff was not disabled under the framework of Grid Rule 204.00 "if he stopped the substance use." (R. 26); see 20 C.F.R. § 404.1520(g); 20 C.F.R. Part 404, Subpart P, Appendix 2, Section 204.00.  Accordingly, the ALJ concluded that "claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date (February 3, 2003) through the date of this decision." (R. 26).

16

**IV.     Standard of Review**

The Court's review of the Commissioner's determination is limited to two inquiries. See 42 U.S.C. § 405(g).  First, the Court must determine whether the Commissioner applied the correct legal standard.  See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Cruz v. Sullivan, 912 F.2d 8, 9 (2d Cir. 1990); Shane v. Chater, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997) (Pooler, J.) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).  Second, the Court reviews whether the Commissioner's findings are supported by substantial evidence within the administrative record.  See Tejada, 167 F.3d at 773; Balsamo, 142 F.3d at 79; Cruz, 912 F.2d at 9; Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).  The Commissioner's finding will be deemed conclusive if supported by substantial evidence.  See 42 U.S.C. § 405(g); see also, Perez, 77 F.3d at 46; Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).  In the context of Social Security cases, substantial evidence consists of "'more than a mere scintilla'" and is measured by "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 83 L. Ed. 126 (1938)).  Although the reviewing court must give deference to the Commissioner's decision, the Act is ultimately "'a remedial statute which must be "liberally applied;" its intent is inclusion rather than exclusion.'" Vargas v. Sullivan, 898 F.2d 293, 296 (2d Cir. 1990) (quoting Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).

**V.    DISCUSSION**

    **a.    Substantial Evidence**

Pursuant to 42 U.S.C. §§ 423(d)(2)(C) and 1382c(a)(3)(J), a claimant found to be "disabled" after employment of the five-step sequential evaluation will not be considered disabled within the meaning of the Act "if alcoholism ... would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."  Frederick v. Barnhart, 317 F. Supp.2d 286, 290 (W.D.N.Y. May 05, 2004). "The 'key factor' in determining whether alcoholism is a 'material' factor is whether the claimant would still meet the definition of disabled under the Act if he/she stopped using alcohol." Id.

> The regulations provide that, where there is evidence of alcoholism, the Commissioner must identify which physical and mental limitations would still remain assuming the claimant did not use alcohol. Then, the Commissioner must analyze whether these limitations would be disabling by themselves. Id. at §§ 404.1535(b)(2); 416.935(b)(2). If plaintiff's remaining limitations would still be disabling independent of her alcoholism, then alcoholism will not be a contributing factor material to disability and plaintiff will be entitled to SSI and SSD benefits. Id. at §§ 404.1535(b)(2)(ii); 416.935(b)(2)(ii). If, however, the Commissioner determines that plaintiff's remaining limitations would not be disabling, then alcoholism will be considered a "material" factor and plaintiff will not be eligible to receive benefits. Id. at §§ 404.1535(b)(2)(i); 416.935(b)(2)(i).

Id.

    Plaintiff argues that "the finding [that] the plaintiff's impairment is nondisabling absent the use of alcohol is not supported by substantial evidence."  The Court disagrees.

As noted above, in the context of Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402

U.S. at 401. The evidence in this case indicates that when Plaintiff used alcohol, such as when he was admitted to the Mental Health Unit of Glens Falls Hospital (the Inpatient Center) on February 12, 2004, he suffered from suicidal ideations and auditory hallucinations, and his judgment and insight were grossly impaired.  However, as Plaintiff stopped drinking (as he attested), his ability to function significantly improved and many of the symptoms that he suffered while under the influence of alcohol abated.   This abatement allowed him to perform many functions in his daily life that he did not previously seem capable of performing.

For instance, Plaintiff told Ms. Longo in January 2005 that he was caring for his injured mother and taking his daughter to a ski area once a week. (R. 364).  In the April 19, 2005 Mental Impairment Medical Source Statement prepared by Dr. Slome, Plaintiff was diagnosed with Major Depression with Psychosis, General Anxiety Disorder, and Hypertension.  However, Dr. Slome rated Plaintiff's "mental abilities and aptitude" to perform different types of unskilled, semiskilled, and skilled work was either "good" (meaning "the ability to function in the area is limited but satisfactory") or "fair" (meaning "the ability to function in this area is seriously limited, but not precluded").  While Dr. Slome noted that "[d]epression impairs activities of daily living" and that "the patient's symptoms of paranoia make it difficult for him to function in settings outside of the home," he also noted in the "treatment and response" section of the same form that Plaintiff was making "slow progress" that had been complicated by the need to adjust medications and dosages.  This suggests that, once the proper adjustment were made, there would be continued progress.

The evidence supports the conclusion that Plaintiff did make improvements which

19

allowed him to perform even more tasks in his daily life. For instance, in September 2005, Plaintiff told Ms. Longo that he had been taking care of his daughter all summer and was coaching her fourth-grade soccer team. (R. 371).  The progress notes from Dr. Kishore from June 21, 2006 through November 11, 2006 also bear out the continued improvement that Plaintiff made as he distanced himself from his use of alcohol. Dr. Kishone noted symptoms including poor concentration and attention resulting in "poor judgment," but also indicated an improvement in Plaintiff's mood and his appropriate thought content at most sessions.  In the March 22, 2006 psychiatric evaluation,  Dr. Kishore observed that Plaintiff was fully oriented, made good eye contact, related well, his affect was dysphoric, his speech was normal, his thought processes were logical and organized, he had no delusions, hallucinations, or suicidal ideation, his attention and concentration were fair, his memory was intact, and his insight was fair.

The medical and other evidence also provided substantial support for the ALJ's conclusion that, absent abuse of alcohol, Plaintiff's mental condition did not satisfy the criteria of Listing Section 12.04.  Listing Section 12.04 requires at least a "marked" degree of limitation in at least two of the three following so-called "B" criteria: 1) restriction in performing the activities of daily living; 2) difficulties in maintaining social functioning; and, 3) difficulties in maintaining concentration, persistence, or pace; or at least a marked degree of limitation in one of the "B" criteria and repeated episodes of decompensation; or that the disorder satisfy the requirements of the so-called "C" criteria. 20 C.F.R. Part 404,

Subpart P, Appendix 1, Section 12.04.[11]   As to Plaintiff's activities of daily living, he reported that he took care of his own personal hygiene and grooming needs, took care of his daughter, took care of his injured mother, washed dishes, did laundry, mowed the lawn, and went out for walks. (R. 177-79, 285, 364).   Regarding social functioning, Plaintiff reported that he took his daughter on ski trips, coached her fourth-grade soccer team, and volunteered at a soup kitchen. (R. 315, 364, 371).   As to Plaintiff's ability to concentrate, he reported that he used his computer, read for recreation, and watched television. (R. 285, 322).   Notably, Plaintiff's only episode of decompensation was when he was abusing alcohol. (See R. 314).   Based on the foregoing, the ALJ assessed that plaintiff had no marked  limitations in any of the "B" criteria. (R. 25).   As the ALJ pointed out, the evidence in the case supported the conclusions that Plaintiff performed the activities of daily living adequately, maintained adequate social functioning, and, was able to maintain concentration, persistence, or pace for at least a one-step tasks. (R. 21-22, 25).

Also, Dr. Hammed, a State agency psychiatric consultant, and Dr. Herrick, a State agency psychological consultant, both assessed that Plaintiff's depressive disorder was not of Listings-level severity. (R. 235, 330).   State agency psychiatric and/or psychological consultants are qualified experts in the field of Social Security disability, and an ALJ is entitled to rely upon their opinions in issuing decisions. 20 C.F.R. §§ 404.1512(b)(6),

---

[11]Under § 12.04(C), a claimant would automatically meet the Listing if there was documented evidence of any of the following: "(1) Repeated episodes of decompensation, each of extended duration; or (2) A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." § 12.04(C). Bossey v. Commissioner of Social Sec., 2009 WL 1293492, at * 6, n. 4 (N.D.N.Y  May 05, 2009).

404.1513(c), and 404.1527(f)(2).   Further,

> "the report of a consultative physician can constitute substantial evidence." <u>Punch v. Barnhart</u>, No. 01 Civ. 3355, 2002 WL 1033543, at *12 (S.D.N.Y. May 21, 2002). Indeed, "[u]nder 20 C.F.R. § 404.1527, not only may the reports of consultative or non-examining physicians constitute substantial evidence of disability, they may even override the opinions of treating physicians." <u>Pease v. Astrue</u>, 06-CV-0264, 2008 WL 4371779, at *9 (N.D.N.Y. Sep.17, 2008) (<u>Snell v. Apfel</u>, 177 F.3d 128, 132-33 (2d Cir.1999); <u>Cruz v. Barnhart</u>, 04-CV-9011, 2006 WL 1228581, at *11-14 (S.D.N.Y. May 8, 2006)).

<u>Bossey v. Commissioner of Social Sec.</u>, 2009 WL 1293492, at * 8 (N.D.N.Y. May 05, 2009).

As to the "B" criteria, Dr. Hameed assessed that Plaintiff had no restrictions of activities of daily living; only mild difficulties maintaining social functioning; only moderate difficulties maintaining concentration, persistence, or pace; and only one or two extended episodes of decompensation. (R. 245). Dr. Herrick assessed that Plaintiff had only moderate restrictions in performing the activities of daily living; moderate difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; and only one or two episodes of deterioration. (R. 340). Both Dr. Hameed and Dr. Herrick assessed that Plaintiff's depressive disorder did not satisfy the "C" criteria of the Listing. (R. 246, 341).

Further, Dr. Funari, a consultative psychologist, evaluated Plaintiff on November 17, 2004, and assessed that while Plaintiff was slow in performing complex mental tasks and had difficulty staying focused, he was able to understand and follow instructions and had good short term memory and abstract thinking.  On March 22, 2006, Dr. Kishore assessed Plaintiff with a GAF score of 70 on Axis V on the DSM-IV multiaxial scale, meaning that Plaintiff had "some mild symptoms (<u>e.g.</u>, depressed mood and mild insomnia) or some

difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally [was] functioning pretty well, with some meaningful interpersonal relationships." Diagnostic and Statistical Manual of Mental Disorders - IV-TR, p. 34.

All of this evidence supports the ALJ's conclusion that "when actively drinking the claimant has significant symptoms consistent with mania, hallucinations, paranoia and suicidal ideations" that significant impair Plaintiff's ability to perform daily functions, but, when he is not drinking, these significant symptoms abate and the impairment is not present.  Therefore, the Court concludes that the ALJ's "finding [that] the plaintiff's impairment is nondisabling absent the use of alcohol"  is supported by substantial evidence.

### b.    Weight Given to Plaintiff's Testimony

Next, Plaintiff contends that the ALJ erred because he "failed to give appropriate weight to the subjective testimony of the plaintiff."  The Court disagrees.

> "It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

Brayton v. Astrue, 2009 WL 2971514, at * 11 (N.D.N.Y. Sept. 11, 2009).

Here, on the material issue of whether Plaintiff presented with a disabling condition

23

when not drinking, there was substantial evidence supporting the Commissioner's findings that he did not.  In rejecting Plaintiff's subjective claims of the mental manifestations of his condition when he was not drinking, the ALJ set forth his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y.1987).  The ALJ cited to prior contradictory statements made by Plaintiff about his drinking, and to evidence - much of which came directly from Plaintiff to his treatment providers -  about the daily activities that Plaintiff could perform when he was not drinking.  In addition, the ALJ cited to Plaintiff's reports that tied most of his "significant symptoms consistent with mania, hallucinations, paranoia and suicidal ideations" to episodes when he was drinking, and noted the absence of such conditions when he was not.

Plaintiff additionally argues that his significant work history entitles him to substantial credibility.  While it is true that a claimant's long work history "lends significant weight to [his] subjective complaints [. . .], it is by no means a dispositive factor."  Wanzo v. Commissioner of Social Sec., 2008 WL 3925542, at * 4 (N.D.N.Y. Aug. 20, 2008).  The ALJ is entitled to deference in his assessment of credibility when, as here, he sees the Plaintiff testify and is able to assess his demeanor, Gernavage v. Shalala, 882 F. Supp. 1413, 1419 n.6 (S.D.N.Y. 1995), and where there is substantial evidence in the record contradicting Plaintiff's subjective complaints and symptoms (at least at times that he was not drinking).

Based on the foregoing, the Court finds that the ALJ did not err when he found Plaintiff's testimony regarding the severity of his condition not to be entirely credible.

c.      **Treating Physician Rule**

Plaintiff argues that "[t]he ALJ failed to properly consider the opinions of the treating

physicians."  Again, the Court disagrees.

> A treating source's medical opinion regarding the nature and severity of an
> impairment is given controlling weight when supported by medically
> acceptable clinical and laboratory diagnostic techniques and is not
> inconsistent with other substantial evidence in the record. Schisler v. Sullivan,
> 3 F.3d 563, 567 (2d Cir.1993) (citing 20 C.F.R. 404.1527(d)). . . . When a
> treating source's medical opinion is not given controlling weight, the proper
> weight accorded depends upon several factors, including: "(i) the frequency
> of examination and the length, nature, and extent of the treatment
> relationship; (ii) the evidence in support of the opinion; (iii) the opinion's
> consistency with the record as a whole; and (iv) whether the opinion is from a
> specialist." Clark v. Comm'r of Social Security, 143 F.3d 115, 118 (2d
> Cir.1998) (citing 20 C.F.R. § 404.1527(d)).  Additionally, the ALJ must always
> "give good reasons" in her decision for the weight accorded to a treating
> source's medical opinion. Id.  There are, however, certain decisions reserved
> to the Commissioner.  Such decisions include the determination that a
> claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(e)(1). "That
> means that the Social Security Administration considers the data that
> physicians provide but draws its own conclusions as to whether those data
> indicate disability. A treating physician's statement that the claimant is
> disabled cannot itself be determinative." Snell v. Apfel, 177 F.3d 128, 133 (2d
> Cir.1999).

Anderson v. Astrue, 2009 WL 2824584, at *9 (E.D.N.Y. Aug. 28, 2009).

In addressing the opinions of Plaintiff's treating psychiatrists, the ALJ indicated that

the evidence established that "when actively drinking the claimant has significant

symptoms consistent with mania, hallucinations, paranoia and suicidal ideations."  (R. 21).

He also indicated that substantial evidence supported the contention that, when not

drinking, Plaintiff did not have these significant symptoms.  Among the evidence supporting

the conclusion that Plaintiff was without these symptoms when not drinking and, therefore,

not suffering from a disability of listing severity, includes the evidence from Plaintiff's

treating psychiatrists and mental health providers as well as the evidence from state

agency psychiatric and psychological consultants including Dr. Funari.  This evidence

provides a substantial basis to reject a treating source's conclusion that Plaintiff was

disabled when not abusing alcohol.  See Bossey, 2009 WL 1293492, at * 8 (not only may

the reports of consultative or non-examining physicians constitute substantial evidence of

disability, they may even override the opinions of treating physicians).

### d.     Failure to Reopen Prior Appilcation

Finally, Plaintiff argues that "[t]he ALJ failed, in his decision, to address the motion

made, both before and at hearing, to reopen a prior application protectively filed November

4, 2003."  The Court lacks subject matter to address this issue.

> Under the Social Security Act, a federal court has jurisdiction over a Social
> Security appeal after the Commissioner renders a final decision. 42 U.S.C.
> 405(g).  As articulated by Congress, such final decision occurs after a
> claimant is a party to his or her hearing, and no findings of fact or decision by
> the Commissioner shall be reviewed except for as provided in the Act. 42
> U.S.C. § 405(h). The Commissioner, in the Social Security Regulations, has
> articulated a four-step process by which a claimant must exhaust certain
> administrative remedies before proceeding to court. First, a claimant files an
> application for benefits and receives an initial determination. 20 C.F.R. §
> 404.902. If a claimant is "dissatisfied with the initial determination," he may
> request reconsideration, 20 C.F.R. § 404.907, and if he is still dissatisfied
> with the reconsidered decision, he may request a hearing before an ALJ. 20
> C.F.R. § 404.929. The claimant may seek review of an unfavorable decision
> by an ALJ by requesting that the Appeals Council review the ALJ's decision.
> 20 C.F.R. § 404.967. The subsequent decision by the Appeals Council is the
> final decision of the Commissioner; thus, a claimant may then seek judicial
> review by filing an action in a federal district court within sixty days after
> receiving notice of the Appeals Council's action. 20 C.F.R. § 404.981.

Desmond v. Astrue, 2009 WL 2993846, at *5 (D. Conn. Sept. 16, 2009).

Plaintiff appears not to have exhausted his administrative remedies with respect to

the earlier applications at issue "so that no final decision entered."  Id. at *6  "Furthermore,

an ALJ's decision to grant or deny a plaintiff's request to reopen prior applications is

discretionary," and "[t]he denial of a request to reopen is not a final decision of the

Commissioner made after a hearing, and thus is not subject to judicial review." Id. (citing

Califano v. Sanders, 430 U.S. 99, 106-09, 97 S. Ct. 980, 51 L. Ed.2d 192 (1977); Latona v.

Schweiker, 707 F.2d 79, 81 (2d Cir.1983); 20 C.F.R. § 404.903(l)).  Even though the ALJ

may have considered evidence of Plaintiff's mental condition from a date before his first

application, there is no final decision on the first application such to afford the Court subject

matter jurisdiction to consider the issue.

## IV.    CONCLUSION

For the reasons set forth above, the Commissioner's motion for judgment on the

pleadings is **GRANTED**, Plaintiff's motion is **DENIED**, and the Commissioner's judgement

is **AFFIRMED**.


**IT IS SO ORDERED**

DATED:  September 30, 2009




Thomas J. McAvoy
Senior, U.S. District Judge

27